805 So.2d 1 (2001)
EAC USA, INC., formerly known as Heidelberg Eastern, Inc., Appellant,
v.
Daniel James KAWA and Roberts Quality Printing, Inc., a/k/a Roberts Printing, Inc., Appellee.
No. 2D00-3582.
District Court of Appeal of Florida, Second District.
July 11, 2001.
Rehearing Denied August 27, 2001.
*2 Stacy D. Blank and Michael Goetz of Holland & Knight LLP, Tampa, and Richard A. Menchini, NY, for Appellant.
H. Vance Smith of Smith, Clark, Delesie, Bierley, Mueller & Kadyk, Tampa, for Appellee Roberts Quality Printing, Inc.
No appearance for Appellee Daniel James Kawa.
CAMPBELL, MONTEREY, (Senior) Judge.
EAC USA, Inc., formerly known as Heidelberg Eastern, Inc., challenges the final summary judgment entered in favor of Roberts Quality Printing, Inc., on EAC's indemnity cross-claim, and the trial court's order denying EAC's motion to amend its cross-claim to assert an additional claim against Roberts for contribution. At oral argument, EAC abandoned its challenge to the summary judgment on its indemnity cross-claim and focused on the order denying EAC's motion to amend its cross-claim. We reverse the order denying EAC's motion to amend its cross-claim.
Daniel Kawa filed a complaint against EAC and Roberts in July 1997, seeking recovery for injuries he sustained in connection with his employment by Roberts. At the time of the accident, Kawa was working as a pressman on a printing press owned by Roberts and allegedly designed, manufactured, and sold by Heidelberg Eastern, Inc., the predecessor of EAC. Kawa was injured when he attempted to "hickey pick" while the printing press was running at full speed. A "hickey" is a foreign object, such as dried ink or paper residue, that has adhered to the plate cylinder of the printing press resulting in a blemish on the final printed product. "Hickey picking" is the process of removing the hickey from the plate. As Kawa reached in to remove a hickey, his arm was drawn into the running press.
In his complaint, Kawa asserted claims against EAC for strict liability and negligence, and against Roberts for negligence and intentional tort. In turn, EAC filed a cross-claim against Roberts seeking indemnification from Roberts for any damages EAC was required to pay Kawa. Roberts filed a motion for summary judgment on EAC's cross-claim for indemnification *3 contending that the nature of EAC's alleged liability to Kawa precluded recovery on its indemnity cross-claim. According to Roberts, Kawa's claims against EAC asserted liability directly attributable to EAC, whereas, under Florida law, EAC could recover on its indemnity cross-claim against Roberts only if its liability was vicarious, constructive, derivative, or technical. Roberts also moved for summary judgment on all of Kawa's claims contending that it was entitled to workers' compensation immunity under the provisions of section 440.11, Florida Statutes (1997).
Prior to the hearing on Roberts's motions for summary judgment, EAC moved for leave to amend its cross-claim to assert an additional claim against Roberts for contribution. In the motion for leave to amend, EAC explained that discovery since the filing of the original cross-claim revealed that EAC possessed a viable contribution claim against Roberts under the Uniform Contribution Among Tortfeasor's Act, section 768.31, Florida Statutes (1997). EAC attached its proposed amended cross-claim to the motion for leave to amend. Roberts objected to the contribution claim, again contending that it was entitled to workers' compensation immunity.
In its proposed contribution claim, EAC included the allegations necessary to overcome Roberts's claim of workers' compensation immunity. EAC alleged that Kawa was employed by Roberts and had sustained injuries in the performance of that employment; that Kawa alleged that EAC's predecessor, Heidelberg Eastern, Inc., had designed, manufactured, and sold to Roberts the printing press involved in Kawa's injury; that Roberts intentionally, and without regard for the safety of Kawa and others, removed from the printing press a safety guard designed to prevent accidents like Kawa's; that Roberts knew the absence of the safety guard from the printing press created a dangerous condition, but intentionally chose to disregard that danger; that the owners, supervisors, and other employees and agents of Roberts intentionally instructed Kawa to engage in dangerous work practices, including the removal of "hickeys" from unguarded areas of the printing press while the press was running; that the owners, supervisors, employees, and agents of Roberts disregarded at least two notices advising Roberts of available safety guards and other safety devices that would have prevented access to the area of the printing press where Kawa was injured; and finally, that Roberts consciously and intentionally engaged in this conduct with the intent to injure Kawa, or alternatively, that Roberts's conduct was substantially certain to result in the injury or death of Kawa.
The trial court heard argument on Roberts's motions for summary judgment against Kawa and EAC, as well as EAC's motion for leave to amend the cross-claim. The trial court granted Roberts's motion for summary judgment against Kawa and denied EAC's motion for leave to amend its cross-claim to assert a claim against Roberts for contribution. Despite EAC's and Kawa's allegations regarding Roberts's conduct, the court ruled as a matter of law that Roberts was entitled to the immunity provisions of section 440.11, granted Roberts's motion for summary judgment on Kawa's claims, and granted summary judgment in favor of Roberts on EAC's indemnity cross-claim. The trial court entered final judgment in favor of Roberts on both Kawa's claims and EAC's cross-claim.
The trial court denied EAC leave to amend its cross-claim based solely on the court's erroneous conclusion that EAC could not state a cause of action for contribution *4 against Roberts because of Roberts's workers' compensation immunity under section 440.11. In light of the decision in Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000), which was decided after the trial court's rulings, the trial court's order denying EAC's motion to amend must be reversed. In Turner, the supreme court confirmed that workers' compensation immunity under section 440.11 is not absolute. Employers are not immune from liability for conduct that is substantially certain to injure an employee.
Under section 440.11, an employee gives up the right to assert common law actions for negligence against its employer in exchange for the imposition of strict liability and the rapid recovery of benefits. Employers are, in turn, afforded immunity from common law negligence suits. Notwithstanding, Florida courts have recognized an exception to workers' compensation immunity for intentional torts. Employees, and third parties alike, may assert intentional tort claims against an employer otherwise immune from common law claims for negligence. See Turner, 754 So.2d at 683.
In Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (Fla.1986), aff'd in part and receded from in part by Turner, 754 So.2d at 687, the supreme court held that to prove the existence of an intentional tort, an employee or third party must allege that the employer either "exhibit[ed] a deliberate intent to injure or engage[d] in conduct which is substantially certain to result in injury or death." See also Lawton v. Alpine Engineered Prods., Inc., 498 So.2d 879 (Fla.1986), aff'd in part and receded from in part by Turner, 754 So.2d at 687; Gerth v. Wilson, 774 So.2d 5 (Fla. 2d DCA 2000). Florida appellate courts improperly interpreted the decisions in Fisher and Lawton as requiring an elevated standard of proof. Several of the district courts of appeal held that the term "substantial certainty" required proof of "virtual certainty"; that is, to overcome the statutory immunity, an employee was required to prove that the employer engaged in conduct that was "virtually certain" to cause injury to the employee. See Clark v. Gumby's Pizza Sys., Inc., 674 So.2d 902 (Fla. 1st DCA 1996); United Parcel Serv. v. Welsh, 659 So.2d 1234 (Fla. 5th DCA 1995); Kenann & Sons Demolition, Inc. v. Dipaolo, 653 So.2d 1130 (Fla. 4th DCA 1995). In Turner, however, the supreme court rejected that interpretation. The court explained that although "substantial certainty" requires a showing greater than gross negligence, the appropriate standard is "substantial certainty" and not the heightened "virtual certainty" standard theretofore applied by the district courts.
The Turner court then discussed in detail the proper application of the "substantial certainty" test. The court examined specifically whether courts are required to apply a subjective or objective standard to the test of "substantial certainty." The court explained that a subjective standard would require proof by an employee that the employer had actual knowledge that its conduct would cause the employee injury. On the other hand, an objective standard required proof only that the employer should have known that its conduct was substantially certain to result in injury. Under the objective standard, an employee is not required to prove actual intent on behalf of the employer. Instead, an employee need only show that a reasonable person would understand that the employer's conduct was substantially certain to result in injury to the employee. The supreme court in Turner adopted the objective test.
In doing so, the court rejected those cases including the decision of this court in *5 Thompson v. Coker Fuel, Inc., 659 So.2d 1128 (Fla. 2d DCA 1995), which required proof that the employer had actual intent to injure the employee. The supreme court explained that requiring proof of actual intent effectively eliminated the substantial certainty test as an alternative basis for avoiding statutory immunity. By requiring proof of actual intent, the courts did nothing more than apply the first test for avoiding immunity which requires proof that the employer exhibited a deliberate intent to injure the employee. The court further noted that the workers' compensation scheme was never intended to insulate employers from liability for intentional torts.
In this case, EAC satisfied its burden of attempting to plead a cause of action for contribution against Roberts under the standards set forth in Turner. EAC alleged intentional conduct by Roberts that was substantially certain to result in injury to Kawa.
Public policy favors the liberal amendment of pleadings so that cases may be decided on their merits. Craig v. East Pasco Med. Ctr., Inc., 650 So.2d 179 (Fla. 2d DCA 1995); State Farm Fire & Cas. Co. v. Fleet Fin. Corp., 724 So.2d 1218 (Fla. 5th DCA 1998); Adams v. Knabb Turpentine Co., Inc., 435 So.2d 944 (Fla. 1st DCA 1983). Florida Rule of Civil Procedure 1.190 provides that "leave of court [to amend pleadings] shall be given freely when justice so requires." All doubts must be resolved in favor of allowing amendment of pleadings. Thompson v. Publix Supermarkets, Inc., 615 So.2d 796 (Fla. 1st DCA 1993). The failure to permit amendment constitutes an abuse of discretion unless it clearly appears the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile. Carter v. Ferrell, 666 So.2d 556 (Fla. 2d DCA 1995). Leave to amend is likewise appropriate when the amendment is based on the same conduct, transaction, or occurrence as the original claim. Knipp v. Weinbaum, 351 So.2d 1081 (Fla. 3d DCA 1977).
The trial court abused its discretion by denying EAC leave to amend its cross-claim to assert a contribution claim against Roberts. None of the obstacles to amendment are present in this case. Roberts never argued, and the trial court did not find, that EAC's proposed amendment would prejudice Roberts; nor did the court find that EAC had abused the privilege to amend as the proposed amendment was EAC's first request to amend. EAC filed its motion for leave to amend prior to the hearing on Roberts's motion for summary judgment and before the case was set for trial. The contribution claim EAC sought to assert arose out of the same incident as its original cross-claim. EAC did not seek to inject unrelated matters into the case. Instead, EAC determined as a result of its discovery, that it could allege an additional cause of action for contribution. Because of the closely-related facts and circumstances supporting the contribution claim, and the fact that EAC sought to amend its cross-claim prior to the case being set for trial, EAC's motion for leave to amend caused no prejudice to Roberts and should have been granted.
For the reasons set forth herein, the order denying EAC's motion to amend its cross-claim is reversed. On remand, EAC shall be permitted to amend its cross-claim to allege a claim for contribution.
Reversed and remanded.
SALCINES, J., Concurs.
ALTENBERND, A.C.J., Concurs specially.
*6 ALTENBERND, Acting Chief Judge, Concurring.
I fully concur in this opinion because it is a correct application of the law announced in Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000). I am concerned, however, that Turner may inadvertently alter the elements of the tort of battery, as it applies in all contexts, merely to avoid the broad immunity given to employers by section 440.11, Florida Statutes (1997).
I assume that the only recognized intentional tort that could be alleged in this case or in Turner would be battery. Under "classic tort law," in order to be liable for a battery, a defendant must do a positive, affirmative act with the intent to cause an offensive contact with the plaintiff. W. Page Keeton, et al. Prosser & Keeton on Torts § 9, at 41 (5th ed.1984). The element of intent can be established if the act is substantially certain to cause the offensive contact. Id. § 8, at 36.
Over a sufficient period of time, any dangerous job is substantially certain to injure or kill some employee. The builder of the Golden Gate Bridge knew with substantial certainty that building the bridge would cause an employee to sustain a serious injury or death. That did not make the act of building the bridge a battery.
Allowing a dangerous machine to be operated without proper guarding by poorly trained employees for a sufficient period will eventually cause an injury or death. In my mind, however, the conduct is a negligent omission that may rise to the level of gross or culpable negligence. It might be good public policy for the legislature to make the employer liable for such aggravated negligence to the same extent that fellow employees and corporate officers are personally liable under section 440.11. I fear, however, that treating such conduct as a battery may prove to create more problems than it solves.