[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12967

_____

D. C. Docket No. 05-01956-CV-T-17-MAP

MARTHA LOCKE,
f.k.a. Martha Villareal,

Plaintiff-Appellant,

versus

SUNTRUST BANK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 23, 2007)**

Before HULL and MARCUS, Circuit Judges, and BARZILAY,[*] Judge.

HULL, Circuit Judge:

_____

[*]Honorable Judith M. Barzilay, United States Court of International Trade, sitting by designation.

Plaintiff-appellant Martha Locke filed suit against her employer, SunTrust Bank, for injuries she sustained when a robber shot her during a bank robbery of the SunTrust branch where she worked. The district court dismissed Locke's complaint with prejudice, concluding: (1) that Locke's negligence claim against her employer was barred by the exclusivity provisions of Florida's workers' compensation laws; and (2) that Locke's complaint failed to state a claim for an intentional tort by her employer. After review and oral argument, we affirm.

## I. BACKGROUND[1]

### A. Locke's complaint

Locke's complaint alleges that on January 8, 2002, she was working as a manager at SunTrust's Recker Highway bank branch in Winter Haven, Florida (the "bank"). Two men entered the bank—one armed with a can of mace and one armed with a handgun—and proceeded to rob the bank. The gunman stood by the teller's window, while the other robber stood by the vault door. The gunman eventually fired twice at two women behind the teller's window. Because the teller's window glass was bulletproof, the bullets ricocheted off the glass.

---

[1]We review <u>de novo</u> the district court's order granting SunTrust's motion to dismiss and take all facts alleged in Locke's complaint as true. <u>See</u> <u>Owens v. Samkle Auto. Inc.</u>, 425 F.3d 1318, 1320 (11th Cir. 2005). A motion to dismiss should be granted only when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. <u>See</u> <u>Spain v. Brown & Williamson Tobacco Corp.</u>, 363 F.3d 1183, 1187 (11th Cir. 2004).

According to Locke's complaint, this "enraged" the gunman, and he walked toward Locke in anger and shot Locke point-blank in the face. The gunman then stepped on Locke and stole her purse.

Locke's complaint also alleges that prior to the January 8, 2002 date she was shot, SunTrust was aware that a teller at the same bank had been pistol-whipped by a bank robber. Locke asserts that several unspecified "incidents of aggravated assault had taken place at" this bank branch prior to January 8, 2002. Locke further alleges that after the pistol-whipping incident, SunTrust hired a security guard for the bank branch. Locke was told that SunTrust had hired a security guard and that the security guard would be in place at the bank branch. On January 8, 2002, there was no security guard in place at the branch, because SunTrust had decided to eliminate the security guard for "economic reasons."

Locke's complaint contains two counts: (1) negligence and (2) intentional tort. Count 1 alleges that SunTrust had a duty to protect Locke and breached its duty by failing to provide sufficient security at its bank branch. Count 2 alleges that SunTrust knew of the presence of unsafe working conditions at its bank branch, failed to provide sufficient security despite that knowledge, and thereby engaged in conduct so "outrageous as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community."

3

**B.     Dismissal order**

SunTrust filed a motion to dismiss Locke's complaint, which the district court granted with prejudice.  As to Count 1 (negligence), the district court concluded that Locke's claim was barred by the exclusivity provisions of the Florida workers' compensation laws because her injuries were causally related to her employment as a bank manager.  As to Count 2 (intentional tort), the district court concluded that Locke's allegations, even if proven, would not support an intentional tort claim against SunTrust.  The district court determined that because Locke did not allege "any additional facts to support a cause of action . . . leave to amend . . . would be futile."  Locke appealed.

## II.  DISCUSSION

**A.     Jurisdiction**

Preliminarily, we address our jurisdiction over Locke's appeal.  The parties do not dispute that Locke's Notice of Appeal was filed more than thirty days after the entry of the district court's dismissal order on April 10, 2006.  See Fed. R. App. P. 4(a)(1)(A) (thirty-day rule).  Locke's Notice of Appeal was due on or before May 10, 2006.

On May 15, 2006, Locke filed a Motion to Extend Time to appeal, in which her counsel asserted that a legal assistant at his firm had miscalculated the thirty-

4

day deadline. On May 22, 2006 (seven days later), the district court granted Locke's Motion to Extend Time, finding "excusable neglect." Locke then filed this appeal on the same day.

Under Fed. R. App. P. 4(a)(5)(A), a district court may extend the time to file a Notice of Appeal if: (i) a party moves to extend no later than thirty days after the time originally prescribed expires; and (ii) the movant "shows excusable neglect or good cause." Locke moved for an extension five days after the original deadline expired. This Court previously has recognized that the phrase "excusable neglect" may include, when appropriate, late filings caused by inadvertence, mistake, or carelessness under certain circumstances. See Advanced Estimating Sys. v. Riney, 77 F.3d 1322, 1324 (11th Cir. 1996). Further, SunTrust does not explain on appeal why it contests the district court's finding of excusable neglect.[2] Accordingly, we conclude that SunTrust has not established that the district court abused its discretion in granting Locke an extension of time to file her appeal or that we lack jurisdiction over Locke's appeal.

## B.    Count 1 (negligence)

Under Florida law, an employer shall pay an employee workers' compensation benefits "if the employee suffers an accidental injury or death

---

[2]This Court reviews excusable neglect decisions for abuse of discretion. See Riney, 77 F.3d at 1325.

arising out of work performed in the course and the scope of employment." Fla. Stat. Ann. § 440.09 (2001).[3] As a general matter, the workers' compensation liability of an employer "shall be exclusive and in place of all other liability of such employer . . . ." Id. § 440.11. This is sometimes known as the workers' compensation exclusivity bar. See Fla. Power & Light Co. v. Huwer, 508 So. 2d 489, 490 (Fla. Dist. Ct. App. 1987).

The Florida courts have established a two-part, work-connectedness test for whether the exclusivity bar applies, which requires that a work-related injury must both (1) arise out of and (2) occur in the course of employment. Byrd v. Richardson-Greenshields Sec., Inc., 552 So. 2d 1099, 1104 n.7 (Fla. 1989); Strother v. Morrison Cafeteria, 383 So. 2d 623, 624 (Fla. 1980); Bituminous Cas. Corp. v. Richardson, 4 So. 2d 378, 378 (Fla. 1941). "[T]o be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances." Strother, 383 So. 2d at 628.

The parties do not contest that the second part of Florida's test is met here, insofar as it is undisputed that Locke was shot in the face at her bank branch and

---

[3]The parties agree that Locke's claims herein are governed by the Florida Workers' Compensation Law as in effect on the date of the robbery, January 8, 2002. All citations to the Florida Workers' Compensation Law are to sections of the statute as it was in effect on January 8, 2002.

while working.  Instead, Locke contends that the first part of the test is absent here.

After a review of Florida law, we disagree because Florida courts have repeatedly

concluded that injuries sustained during robberies in the workplace "arise out of"

employment under Florida law and have granted workers' compensation immunity

to defendant-employers in several cases with facts closely analogous to this one.

For instance, in Sullivan v. Atlantic Federal Savings & Loan Association,

454 So. 2d 52, 53 (Fla. Dist. Ct. App. 1984), the plaintiff's decedent was a bank

manager.  The bank branch had been robbed twice within the previous year, and

during the course of the second prior robbery, the robber escaped after threatening

to return and kill the bank manager.  Sullivan, 454 So. 2d at 53.  The same robber

ultimately returned and killed the bank manager during the course of a third bank

robbery.  Id.  The Florida appellate court affirmed the trial court's grant of

summary judgment to the bank on the plaintiff's claim that the bank negligently

failed to provide security, concluding that the claim was barred by the workers'

compensation exclusivity bar.  Id. at 53-54.

Similarly, in Winn Dixie Stores, Inc. v. Parks, 620 So. 2d 798, 799-800 (Fla.

Dist. Ct. App. 1993), the Florida appellate court held that the injury and subsequent

death of an assistant manager of a grocery store "arose out of" his employment

when the manager was kidnaped while driving home from work, forced to return to

the store to open the store's safe, and then stabbed.  The Florida appellate court observed that under Florida law, "[a] work-related assault is covered by workers' compensation," and concluded that the employer was entitled to workers' compensation immunity from the wrongful death suit.  Winn Dixie, 620 So. 2d at 799 (citing, inter alia, Sullivan, 454 So. 2d 52); see also Lovin Mood, Inc. v. Bush, 687 So. 2d 61, 62 (Fla. Dist. Ct. App. 1997) (finding "the necessary causal connection between" the plaintiff's injuries and her employment to trigger the workers' compensation exclusivity bar where, during store hours, a customer lured the plaintiff-employee to the back of the store and raped her); McDaniel v. Sheffield, 431 So. 2d 230, 231 (Fla. Dist. Ct. App. 1983) (affirming the grant of workers' compensation immunity to defendants where plaintiff's decedent, a clerk at defendants' store, was shot and killed by an unknown armed robber of the store); Prahl Bros., Inc. v. Phillips, 429 So. 2d 386, 387 (Fla. Dist. Ct. App. 1983) (affirming grant of workers' compensation benefits to a hotel employee who suffered psychiatric impairment as a result of an armed robbery at her hotel, during which she had a gun placed to her head, a ring was physically removed from her finger, and she was forced to lie on the floor), overruled on other grounds by City of Holmes Beach v. Grace, 598 So. 2d 71 (Fla. 1992).

The Florida Supreme Court's decision in Strother is also noteworthy.  In

8

Strother, the plaintiff-employee Strother was a cashier at a cafeteria. Although it was not part of her regular duties, Strother drove the cafeteria manager on two occasions to the bank to deposit the day's receipts. On the two days prior to the incident in which she was injured, Strother noticed two men in the cafeteria who were neither employees nor customers. On the evening of the incident, Strother noticed the same two men enter the cafeteria. Strother left work and drove directly home (a fifteen- to twenty-minute drive), at which point she was assaulted and had her purse taken by one of the men whom she had observed in the cafeteria. See Strother, 383 So. 2d at 623-24. Applying the two-part test, the Florida Supreme Court concluded that Strother's injuries were properly compensable under workers' compensation. Id. at 628. Although the issue in Strother was whether the employee was entitled to workers' compensation benefits (Strother was not strictly an exclusivity-bar case), Strother nonetheless reflects the Florida courts' expansive view of what constitutes an injury arising out of and in the course of employment for purposes of Florida's workers' compensation statute.

Here, Locke's complaint alleges that she was a bank manager shot in the face inside her bank branch and during a robbery of the bank branch. Moreover, her complaint alleges that customers were present during the robbery; i.e., the robbery took place during normal business hours. Given the allegations of the

9

complaint, and the above Florida authority, we have little difficulty concluding that Locke's injury arose out of her employment with SunTrust under Florida law. As such, Locke's negligence claim is barred by Florida's workers' compensation exclusivity bar.

Locke's main arguments against application of the exclusivity bar are based primarily on Professional Telephone Answering Service, Inc. v. Groce, 632 So. 2d 609 (Fla. Dist. Ct. App. 1993). We first discuss what happened in Groce and then explain why Locke's arguments lack merit.

In Groce, the plaintiff-employee Groce, a telephone answering service operator, claimed that she was sexually assaulted in the workplace by a third party (non-employee) as a result of her employer's negligence. Groce, 632 So. 2d at 610. The state trial court held that Groce's employer could not plead the affirmative defense of workers' compensation immunity as a matter of law, because its employee was the alleged victim of a sexual assault by a third party. Id.

Reversing on appeal, the Florida appellate court concluded that the workers' compensation exclusivity bar was available as a defense. Id. at 610-11. After concluding that the exclusivity bar could be pled as a defense to Groce's claims, the Florida appellate court then decided that "[w]hether the sexual assault in this

10

case was a risk inherent in the nature of the work remains a question to be determined by the fact-finder." Id. at 611.

Locke's first argument is that Groce narrowed the broad definition of what can constitute an injury "arising out of" employment by examining whether the injury was caused by "a risk inherent in the nature of the work" in question. Id. (emphasis added). We reject Locke's claim that the "risk inherent" language in Groce, a sexual assault case, somehow narrowed Florida's expansive view of what constitutes a work-related injury, at least in the context of an employee's injury suffered in the workplace during a robbery of the workplace. The Florida robbery cases discussed above are strikingly similar to this case and support the district court's conclusion that Locke's injuries as alleged in the complaint "arose out of" Locke's job as a SunTrust bank manager.[4]

_____

[4]The Florida Supreme Court has established one exception to Florida's generally expansive view of workers' compensation immunity: employees' civil lawsuits against employers based on sexual harassment by a co-employee. See Byrd, 552 So. 2d at 1102. In Byrd, the Florida Supreme Court stated that "[t]he clear public policy emanating from federal and Florida law holds that an employer is charged with maintaining a workplace free from sexual harassment. Applying the exclusivity rule of workers' compensation to preclude any and all tort liability effectively would abrogate this policy . . . ." Id. at 1104.

It is noteworthy that Groce concluded that Byrd is restricted to sexual harassment by an employee, which is by public policy the direct responsibility of the employer. See Groce, 632 So. 2d at 610. More importantly, this is also not a sexual harassment case, and Byrd "acknowledge[s] and reaffirm[s]" Florida's generally expansive view of the workers' compensation statute, citing with approval to, inter alia, Strother (assault during robbery) and Prahl Brothers (assault during robbery). Byrd, 552 So. 2d at 1101-02. Indeed, after Byrd was decided in 1989, the Florida courts have applied their pre-Byrd expansive view of what constitutes an injury arising out of and in the course of employment and concluded that the exclusivity bar precludes employees' claims against employers for injuries caused by assaults in

11

Locke also stresses the <u>Groce</u> court's statement that "[w]hether the sexual assault in this case was a risk inherent in the nature of the work remains a question to be determined by the <u>fact-finder</u>." <u>Groce</u>, 632 So. 2d at 611 (emphasis added). However, we do not attach the same significance to this statement as does Locke. As discussed above, there is no shortage of cases in which the Florida appellate courts have granted judgment as a matter of law to defendant-employers in robberies on the basis of the workers' compensation exclusivity bar. Additionally, Locke ignores that the <u>Groce</u> court's holding was limited to "the sexual assault <u>in this case</u>." <u>Id.</u> (emphasis added). Thus, it cannot be said, as Locke seems to imply, that the issue is <u>always</u> a question for the jury. Indeed, in <u>Lovin Mood</u>, a third-party sexual assault case decided after <u>Groce</u>, the Florida appellate court reversed a denial of summary judgment and directed the trial court to enter judgment for the defendant-employer based on workers' compensation immunity grounds. <u>See</u> <u>Lovin Mood</u>, 687 So. 2d at 61-62.

For all of these reasons, we affirm the district court's dismissal of Count 1 of Locke's complaint because her negligence claim against her employer is precluded by the workers' compensation exclusivity bar.

## C.      Count 2 (intentional tort)

---

the workplace by third parties (i.e., non-employees). <u>See</u> <u>Lovin Mood, Inc.</u>, 687 So. 2d at 62 (1997) (sexual assault); <u>Winn Dixie</u>, 620 So. 2d at 799-800 (1993) (assault during robbery).

Notwithstanding the general tort immunity for employers, the Florida Supreme Court has recognized an intentional tort exception to the workers' compensation exclusivity bar. Specifically, if an employer engages in an "'intentional act designed to result in or that is substantially certain to result in injury or death to the employee,'" the workers' compensation exclusivity bar does not apply. Turner v. PCR, Inc., 754 So. 2d 683, 686 (Fla. 2000) (quoting Eller v. Shova, 630 So. 2d 537, 539 (Fla. 1993)), superseded by statute as stated in Feraci v. Grundy Marine Constr. Co., 315 F. Supp. 2d 1197, 1205 n.11 (N.D. Fla. 2004). However, the intentional tort exception only applies (to cases governed by pre-2003 law) if the employer (1) exhibited a "deliberate intent to injure," or (2) engaged in conduct that a reasonable person would view as "substantially certain to result in injury or death." Id. at 687-88 (quotation marks and citation omitted). The "substantially certain" standard is an objective one, and it requires a showing even greater than a showing of gross negligence. See id. at 687-89 & n.4.[5]

_____

[5]This "substantially certain" standard was superseded by statute in 2003 when the Florida legislature amended the Florida Workers' Compensation Law to codify the intentional tort exception to the exclusivity bar. See Feraci, 315 F. Supp. 2d at 1205 n.11. When it amended the Act in 2003, the legislature replaced the "substantially certain" standard with a heightened "virtually certain" standard. See Turner, 754 So. 2d at 687 n.4 (discussing the differences between the "substantially certain" standard and the "virtually certain" standard).

The parties agree that the pre-2003 "substantially certain" test governs this case because the injuries at issue occurred in January 2002, and accordingly, we will apply the "substantially certain" test and not discuss the matter further. See also Pendergrass v. R.D. Michaels, Inc., 936 So. 2d 684, 689 n.1 (Fla. Dist. Ct. App. 2006) (applying "substantially certain" standard instead of "virtually certain" standard because incident complained of occurred in 2000).

Here, Locke does not contend that SunTrust deliberately intended to injure her. Instead, she argues only that the district court erred in concluding that SunTrust's conduct, as alleged in the complaint, did not amount to conduct "substantially certain to result in [her] injury or death."

We disagree with Locke and affirm the district court. The allegations of Locke's complaint do not rise to the level of "indifference to employee safety" found in Florida cases in which the intentional tort exception has been held to apply. Bourassa v. Busch Entm't Corp., 929 So. 2d 552, 556-58 (Fla. Dist. Ct. App. 2006) (collecting cases).

The allegations of Locke's complaint material to the "substantially certain" issue are: (1) prior to the date of the robbery, SunTrust knew that a teller had been pistol-whipped by a bank robber at her bank branch; (2) prior to the date of the robbery, "several incidents of aggravated assault had taken place at" her bank branch; (3) after the pistol-whipping incident, SunTrust hired a security guard; (4) Locke was told that SunTrust had hired a security guard and that the guard would be in place; and (5) the guard was not in place on the date of the robbery, for economic reasons.

Locke's allegations are analogous to those in the case of Garrick v. Publix Super Markets, Inc., 798 So. 2d 875 (Fla. Dist. Ct. App. 2001), where the Florida

14

court concluded that the intentional tort exception to workers' compensation immunity did not apply. In Garrick, the plaintiffs were employed by Brinks Incorporated, a security company providing transport of money to Publix grocery stores. Garrick, 798 So. 2d at 876, 878. The Garrick plaintiffs were shot and injured during an armed robbery at a Publix in Boynton Beach, Florida, and they sued Brinks for intentional tort. Id. at 876. According to the Garrick plaintiffs' complaints, the police had received information from a confidential informant that an armored car robbery was being planned at a different Publix in Boynton Beach. Id. at 877. In Garrick, the plaintiffs' complaints further alleged that Brinks knew about the tip received by police, but Brinks nevertheless failed to take steps to prevent the robbery or offer the plaintiffs any extra protection. Id.

The Florida court in Garrick held that the plaintiffs' allegations did not state a claim for intentional tort under Turner. Garrick, 798 So. 2d at 879. The Florida court concluded that the allegations could not "support a jury's verdict that Brinks engaged in conduct that was substantially certain to result in injury" to the plaintiffs. Id.

If anything, Locke's allegations are weaker than those of the Garrick plaintiffs. In Garrick, the plaintiffs claimed that Brinks knew of an actual (albeit unspecified) pending armed robbery of a Brinks vehicle at a Publix store in

15

Boynton Beach and nevertheless did nothing to prevent it. By contrast, there is no allegation in this case that SunTrust had any knowledge of a plan (even an unspecific plan) to rob the Recker Highway branch at any point in time.

Locke focuses on the alleged prior incidents at her bank branch, as well as SunTrust's decision to hire (and subsequently remove) a security guard. Where Florida courts have applied the intentional tort exception to the workers' compensation exclusivity bar, they have attached significance to both employers' prior knowledge of earlier incidents and employers' decisions to remove safety mechanisms. See Pendergrass v. R.D. Michaels, Inc., 936 So. 2d 684, 690 (Fla. Dist. Ct. App. 2006); EAC USA, Inc. v. Kawa, 805 So. 2d 1, 3, 5 (Fla. Dist. Ct. App. 2001). However, the other common theme in those Florida intentional tort decisions is "intentional conduct to prevent the employee from learning and appreciating the risks involved in the work [that are] specifically known by the employer." Pendergrass, 936 So. 2d at 691. Put another way, Florida courts have focused on employers' "concealment of risks." Id. at 692. In this case, there is no allegation that SunTrust hid any risk to Locke and/or concealed from Locke—the manager of its bank branch—the fact that the security guard had been removed prior to the date of the robbery.[6]

---

[6]We note that Locke alleges that she was "told" a security guard would be in place and that "upon information and belief," the guard was removed for economic reasons. But the

16

Locke urges that this case is essentially indistinguishable from EAC USA, in which the plaintiff, Kawa, worked as a pressman on a printing press owned by Roberts Quality Printing, Inc. EAC USA, 805 So. 2d at 2. Kawa was injured when he attempted to remove a foreign object from the printing press while it was running at full speed. Id. The Florida court ruled that Kawa's complaint contained sufficient allegations to invoke the intentional tort exception where he alleged that, inter alia, Roberts intentionally removed from the printing press a safety device designed to prevent accidents like Kawa's and Roberts "intentionally instructed Kawa to engage in" the dangerous practice of removing foreign objects from the printing press while it was running (which Kawa could only do after the safety device had been removed). Id. at 3.

The present case is materially distinguishable from EAC USA because there is no allegation that SunTrust intentionally instructed Locke to engage in any specific type of dangerous work practice after removing the security guard. For instance, SunTrust did not instruct Locke to guard the bank at midnight in the absence of the security guard or to confront bank robbers if and when they came to

complaint contains no allegation that SunTrust's decision to remove the guard was concealed from Locke. Moreover, Locke does not argue or discuss concealment in her brief on appeal, and there is no reason whatsoever to think that SunTrust even could have concealed the presence of the security guard (or lack thereof) from Locke, given that she not only worked at the bank branch in question, but also managed it.

the bank. Moreover, the "dangerous condition" created in <u>EAC USA</u> upon the removal of the safety device was far more "substantially certain" to result in the injury of Kawa or another Roberts employee, given that Roberts was instructing its employees to engage in the precise type of conduct that the safety device was designed to prevent. <u>Id.</u> In this case, SunTrust's removal of the security guard may well have increased the likelihood of a bank robbery at the Recker Highway branch, but—particularly in the absence of some prior warning of a specific robbery, as in <u>Garrick</u>—we cannot say that there was a "substantial certainty" that it would result in injury or death to Locke. Instead, a <u>third party</u> intervened to cause the bank robbery that injured Locke. Accordingly, we agree with the district court's decision to dismiss Count 2 of Locke's complaint for failure to state a claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order of dismissal.

**AFFIRMED.**

18