VILLANTI, Judge.
Southern Developers & Earthmoving, Inc., and R. Anthony Gill, a/k/a Ronald A. Gill, appeal the final summary judgment entered in favor of Caterpillar Financial Services Corporation (CAT) in its action for a deficiency judgment under a promissory note and security agreement covering industrial earthmoving equipment that CAT sold to Southern and subsequently repossessed. Because CAT failed to prove the amount of the deficiency judgment to which it was entitled, summary judgment was improperly granted in its favor. Therefore, we reverse the final summary judgment and remand for further proceedings. This ruling requires us also to reverse the subsequent final judgment for attorney’s fees entered in favor of CAT.
In 2003, Southern purchased five pieces of industrial earthmoving equipment from CAT. Southern executed a promissory note and security agreement as part of the purchase, and Gill signed a personal guar *59 anty of the note. The following year, Southern allegedly breached the terms of the note by failing to make the payments as required. Based on the terms of the security agreement, CAT retook possession of the equipment. CAT subsequently sold four pieces of the equipment through a private sale and the remaining piece of equipment through an Internet auction.[1] When those sales did not produce funds sufficient to cover the amount due under the note, CAT sued Southern for its alleged breach of the note, and it sued Gill for his alleged breach of the personal guaranty.
CAT’s amended complaint alleged that it had sold the repossessed equipment in a commercially reasonable manner but had recovered less than the amount of the debt owed by Southern. CAT therefore sought a deficiency judgment from Southern. In its answer, Southern specifically denied that the sale of the repossessed equipment had been done in a commercially reasonable manner, and it also raised this claim as an affirmative defense.
CAT subsequently filed a motion for summary judgment, in which it again asserted that it had sold the repossessed equipment in a commercially reasonable manner. In support of its motion, CAT filed the affidavit of a “Special Accounts Representative,” who alleged that proper notice was given to Southern and Gill of both of the intended private sales and the subsequent Internet auction. The affidavit also authenticated the various sale notices that were sent to both Southern and Gill and alleged again that the sales were all commercially reasonable. However, neither the affidavit nor the motion provided any details of the sales transactions themselves. CAT did not file any of the contracts or purchase orders relating to the sales, and it submitted nothing to establish what amount it obtained for each piece of repossessed equipment. Further, neither CAT’s motion nor its affidavit included any facts concerning the general practices and methodology of selling used equipment in the industrial earthmoving equipment industry.
In response to CAT’s motion for summary judgment, Southern filed Gill’s affidavit in which he alleged that, based on his experience in owning and using industrial earthmoving equipment, sale of the repossessed equipment through private sales or Internet auctions was not a commercially reasonable practice in the industrial earth-moving equipment industry. Gill alleged that this type of equipment was more usually sold through public auctions specifically held for this purpose. Attached to Gill’s affidavit was a letter from Richie Brothers Auctioneers, which indicated that Richie Brothers would have purchased the equipment for $730,000 — an amount $22,589.40 more than what CAT had obtained through its private sale and Internet auction. This unsigned letter from Richie Brothers was not sworn or certified, nor was it otherwise authenticated in Gill’s affidavit. Further, Gill alleged in his affidavit that the $730,000 figure from Richie Brothers was not a firm price for the *60 equipment but rather was a “floor” below which the auction price for the equipment would not go.
Despite this apparent factual dispute concerning whether the sale of the repossessed equipment was commercially reasonable and despite the lack of any documentation from CAT concerning the details of the sales it conducted, the tidal court granted final summary judgment in favor of CAT in the amount of $140,812. This figure is the amount of the debt less the amount recovered by CAT through its private sale and Internet auction less the $22,589.40 difference between CAT’s recovery and the amount listed in the Richie Brothers’ letter. Notably, the judgment contains no finding of fact as to whether either sale of the repossessed equipment was conducted in a commercially reasonable manner. Southern and Gill now seek review of this final judgment.
Under Article 9 of the Uniform Commercial Code, as codified in section 679.609(1), Florida Statutes (2006), a secured party, such as CAT, may take possession of collateral after a default by the debtor. The secured party then “may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.” § 679.610(1). However, if the secured party wishes to preserve its right to seek a deficiency judgment, the secured party is not at liberty to dispose of the repossessed collateral in any manner it wants. Instead, “[ejvery aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.” § 679.610(2). This rule is in place “ ‘to protect the debtor, because [it] help[s] prevent the creditor from acquiring the collateral at less than its true value or unfairly understating its value so as to obtain an excessive deficiency judgment.’ ” Burley v. Gelco Corp., 976 So.2d 97, 100 (Fla. 5th DCA 2008) (quoting Allen v. Coates, 661 So.2d 879, 884 (Fla. 1st DCA 1995)).
If a secured party elects to repossess and resell its collateral, the debtor is liable for any deficiency remaining after the sale as a matter of law. See § 679.608(l)(d); see also Weiner v. Am. Petrofina Mktg., Inc., 482 So.2d 1362, 1364 (Fla.1986). However, the amount of the deficiency judgment to which the secured party is entitled is a matter of fact, not law. To establish entitlement to a deficiency judgment in a certain amount, the secured party must show that its disposition of the collateral was commercially reasonable but nevertheless resulted in the recovery of an amount less than the amount of the secured debt. Burley, 976 So.2d at 101. Accordingly, if the debtor places the commercial reasonableness of the disposition of collateral “in issue,” the secured party has the burden to establish that every aspect of that disposition was commercially reasonable. See § 679.626(2); see also Weiner, 482 So.2d at 1364-65; Burley, 976 So.2d at 100. Alternatively, the secured party may concede that its disposition of the collateral was commercially unreasonable, introduce evidence to prove the fair market value of the collateral at the time of repossession, and allow the debtor an additional credit for the difference between the fair market value and the amount obtained by the secured party at the commercially unreasonable sale. See Weiner, 482 So.2d at 1364. As applicable to this case, “commercial reasonableness” is defined as a disposition “in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.” § 679.627(2)(e).
*61 Here, CAT’s pleadings and its affidavit in support of its motion for summary judgment specifically alleged that its sales of the repossessed equipment were commercially reasonable. Southern disputed the commercial reasonableness of the sales in its pleadings. Thus at the summary judgment hearing, the commercial reasonableness of the sales was in issue and, to be entitled to summary judgment in its favor, CAT was required to establish that it sold the repossessed equipment “in conformity with reasonable commercial practices among dealers” of industrial earthmoving equipment. However, CAT submitted absolutely no evidence to satisfy its burden on this issue.
The only evidence offered by CAT in support of its motion for summary judgment was the affidavit of its “Special Accounts Representative” with the attached notices of sale. While this evidence shows that CAT complied with the procedural requirements of section 679.611, it does not bear on the question of whether the sales themselves were conducted in conformity with the reasonable commercial practices among dealers in the industrial earthmoving equipment industry. On the issue of commercial reasonableness, CAT failed to submit the purchase contracts for any of the pieces of repossessed equipment or any information to establish the sale price it obtained for any single piece of the repossessed equipment. Nor did CAT submit any evidence to support its implied assertion that the prices it obtained through the private sale and Internet auction were higher than those it could have obtained by selling the repossessed equipment through other means. CAT also presented no evidence concerning how contracts for the sale of used industrial earthmoving equipment are customarily reached within the industry and whether private sales and Internet auctions are commonly used. Thus, there was simply no evidentiary basis upon which the trial court could have found that CAT’s sale of the repossessed equipment was commercially reasonable, and because CAT failed to carry its evidentiary burden to establish commercial reasonableness, it was not entitled to final summary judgment in its favor.
In this appeal, CAT contends that the issue of damages is moot because it established the amount of the deficiency judgment through the alternative method of proving that the amount it recovered through its sales was less than the fair market value of the repossessed equipment. We first note that CAT never alleged or asserted this alternative measure of damages in any pleading. Instead, CAT’s position until the very start of the hearing on the motion for summary judgment was that its sales were commercially reasonable and that it was entitled to a deficiency judgment measured by the difference between the amount of the debt and the amount obtained through its sales of the equipment. Southern had no notice that CAT would concede commercial unreasonableness at the hearing and then attempt to obtain a deficiency judgment based on an alternative measure of damages. Thus, we question whether the trial court properly granted CAT’s motion based on a measure of damages raised for the first time at the hearing on the motion for summary judgment.
However, even if this measure of damages was properly considered by the court, CAT failed to meet its burden of proof. When a sale of collateral is commercially unreasonable, a presumption arises that “the fair market value of the collateral at the time of repossession was equal to the amount of the total debt that it secured.” Weiner, 482 So.2d at 1365. To overcome this presumption, the secured *62 party must offer evidence to prove that the fair market value of the collateral was less than the amount of the debt. Id. Until CAT offered such evidence, it was not entitled to a deficiency judgment at all.
Here, CAT offered no evidence to establish the fair market value of the equipment at the time of repossession. Instead, it “conceded” to the amount included in the Richie Brothers’ letter. But when Southern attempted to use the Richie Brothers’ letter to prove commercial unreasonableness, the trial court specifically declined to accept the letter as evidence. The court properly noted that the letter was not sworn to or otherwise authenticated so as to make it admissible into evidence. Having rejected the letter as inadmissible when offered by Southern, the court could not then allow CAT to rely on the same inadmissible letter as proof of fair market value because a summary judgment may not be predicated on inadmissible evidence. See Fla. R. Civ. P. 1.510(c), (e) (providing that a motion for summary judgment must be based on the “affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence” and that “[sjworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto”). Thus, CAT failed to rebut the presumption that the fair market value was equal to the amount of the debt and so was not entitled to a deficiency judgment in its favor.
Because we are reversing the final summary judgment in favor of CAT, we must address two other issues. First, we must reverse the final judgment for attorney’s fees entered in favor of CAT based on the prevailing party attorney’s fee provision in the security agreement. Paragraph 11 of the security agreement provides for an award of attorney’s fees if CAT is required to take any action to enforce the agreement or its accompanying promissory note. The record shows that the fee judgment at issue was entered based solely on a finding that CAT had prevailed in its action on the promissory note by having summary judgment entered in its favor. Hence, because we are reversing the final summary judgment on the note, we must also reverse the final judgment for attorney’s fees and remand for reconsideration of the fee motion at the conclusion of the trial court proceedings on remand.
Second, we must reverse the trial court’s earlier ruling denying Southern’s motion for leave to amend its answer. Two months after CAT filed its motion for summary judgment but while discovery was still ongoing, Southern filed a motion seeking leave to amend its answer to add a counterclaim for damages based on the alleged loss of a surplus over the amount of the outstanding debt that would have been received had CAT sold the repossessed equipment in a commercially reasonable manner. Despite the fact that discovery was ongoing and no hearing had yet been set on CAT’s motion for summary judgment, the trial court denied this motion.
“Public policy favors the liberal amendment of pleadings so that cases may be decided on their merits.” EAC USA, Inc. v. Kawa, 805 So.2d 1, 5 (Fla. 2d DCA 2001) (citing Craig v. E. Pasco Med. Ctr., Inc., 650 So.2d 179 (Fla. 2d DCA 1995)); see also Fla. R. Civ. P. 1.190 (providing that “leave of court [to amend pleadings] shall be given freely when justice so requires”). All doubts must be resolved in favor of allowing the amendment of pleadings. See EAC USA, Inc., 805 So.2d at 5. Because of this policy favoring the liberal amendment of pleadings, refusal to permit an amendment constitutes an abuse of discretion unless (1) the privilege to amend has been abused, (2) the amendment would *63 be futile, or (3) the amendment would prejudice the opposing party. See id.; Carter v. Ferrell, 666 So.2d 556, 557 (Fla. 2d DCA 1995).
Here, the record does not show that CAT established that any of these three exceptions to the liberal policy of permitting amendments existed. First, Southern had not abused its privilege to amend because it had not sought leave to amend its answer at any time prior to the filing of the motion at issue. Second, Southern’s proposed amendment would not have been futile because section 679.625(4) specifically provides that “[a] debtor whose deficiency is eliminated under s. 679.626 may recover damages for the loss of any surplus.” Third, there is nothing in the record to show that CAT would have been prejudiced by Southern’s amendment, particularly since the proposed counterclaim arose from the same transaction as CAT’s claim, discovery was still ongoing, and CAT’s motion for summary judgment had not been set for hearing when Southern sought leave to amend.
Given these facts, the trial court abused its discretion by denying Southern’s motion for leave to amend its answer to add a counterclaim. Therefore, on remand, the trial court should give Southern the opportunity to amend its answer to add this counterclaim should Southern still wish to do so.
Reversed and remanded for further proceedings.
DAVIS and SILBERMAN, JJ., Concur.

. CAT originally noticed the sale of all five pieces of equipment through private sales. The first notice, dated September 30, 2004, scheduled a private sale of four pieces of the equipment for October 11, 2004. The second notice, dated December 8, 2004, scheduled the private sale of the remaining piece of equipment, a "Caterpillar D6MLGP track-type tractor,” for December 20, 2004. For reasons undisclosed by the record, the December 20 private sale was not completed. Instead, on March 28, 2005, CAT sent a new “notice of public sale” for that tractor, indicating that the new notice "took precedence over the previous notice” and indicating that the tractor would be sold at an Internet auction on April 7, 2005. Apparently this tractor was sold at this Internet auction.